IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JENNIFER GIBSON, for her minor child )
C.E.,                                )
                                     )
              Plaintiff-Claimant     )        10 C 7715
                                     )
        vs.                          )        Jeffrey T. Gilbert
                                     )        Magistrate Judge
MICHAEL J. ASTRUE,                   )
Commissioner of Social Security,     )
                                     )
              Defendant-Respondent.  )

**MEMORANDUM OPINION AND ORDER**

Jennifer Gibson, on behalf of her minor child C.E. ("Claimant"), brings this

action under 42 U.S.C. §405(g), seeking reversal or remand of the decision by

Respondent Michael J. Astrue, Commissioner of Social Security

("Commissioner"), in which the Commissioner denied Claimant's application for

supplemental security income benefits. This matter is before the Court on the

parties' cross-motions for summary judgment [Dkt.#17, 25]. Claimant argues that

the Administrative Law Judge's ("ALJ") decision denying his application for

benefits should be reversed and/or that the case should be remanded for further

proceedings. Claimant raises the following issues in support of his motion: (1)

whether the ALJ gave insufficient weight to Claimant's treating source; (2)

whether the ALJ failed to weigh the evidence concerning the severity of

Claimant's limitations; (3) whether the ALJ properly analyzed the credibility of

Claimant and his mother; and (4) whether the ALJ erred in failing to call a medical

expert. For the reasons set forth below, Claimant's motion for summary judgment is granted [Dkt.#17], and the Commissioner's cross-motion is denied [Dkt.#25]. This case is remanded to the Social Security Administration for further proceedings consistent with this Memorandum Opinion and Opinion.

## I. BACKGROUND

### A.    Procedural History

Claimant filed an application for supplemental security income ("SSI") on January 22, 2008, alleging a disability onset date of October 9, 1995. R.11. The Social Security Administration ("SSA") denied his application on May 1, 2008. R.58. Claimant then filed a request for reconsideration, which the SSA denied on July 9, 2008. R.67. On September 24, 2008, Claimant requested a hearing before the ALJ. R.11.

On October 23, 2009, ALJ Karen Sayon presided over a hearing at which Claimant appeared with his mother and attorney. R.32. Claimant and his mother testified at the hearing. On November 23, 2009, the ALJ issued her decision finding that Claimant was not disabled under the Social Security Act. R.25.

Claimant filed a request for review of the ALJ's decision. R.6. On October 8, 2010, the Appeals Council denied that request rendering the ALJ's decision as the final decision of the Commissioner. R.1. On April 28, 2011, Claimant filed this action for review pursuant to 42 U.S.C. §405(g).

**B.**      **Hearing Testimony – October 23, 2009**

**1. Claimant C.E.**

At the time of the hearing, Claimant was 14 years old and attended grade school in Joliet, Illinois. R.35-36. According to his testimony, he was suspended at the time of the hearing for fighting with another student. R.36-37. Claimant testified that he has been suspended from school before for fighting with other students. R.41. Claimant also testified that he has gotten into fights with his teachers at the various schools that he has attended.R.45.

Claimant testified that he did not have any friends and did not play with other children. R.41. He testified that he has six siblings with whom he does not get along. R.41. Claimant testified that he likes to stay in the house and watch television. R.41. He testified that his mother asks him to do his chores but he does not do them. R.44. Claimant testified that he does not have any hobbies and does not like to play on the computer anymore. R.44.

Claimant testified that he has started fires before but that he does not remember when he began setting fires. R.45. Claimant also testified that he has gotten in trouble with the police for breaking and entering. R.43.

Claimant testified that he currently was taking medication and that he had been taking some type of medication for many years. R.39. He also testified that had been seeing a therapist for a number of years. R.40.

### 2. Jennifer Gibson – Claimant's Mother

Ms. Gibson testified that she has six other children who are younger than Claimant. R.47. She testified that Claimant routinely fights with and hits his younger siblings. R.48. She testified that Claimant began taking medications when he was in preschool and that he has been taking medication again for the past year. R.49. After preschool, Ms. Gibson testified that she had lost custody of Claimant and his siblings for about four years but that she regained custody about five years ago. R.49.

Ms. Gibson testified that Claimant had attended a behavioral school but he has returned to the public school. R.47. She testified that Claimant, at the time of the hearing, was having problems at school, including fighting with other students and his teachers, which have resulted in suspensions. R.47. Ms. Gibson testified that Claimant does not have any friends at school and just stays at home, a situation that has persisted for a number of years. R.48.

Ms. Gibson testified that Claimant's behavior had been better but that she believes that it has regressed. R. 52. More recently, Ms. Gibson testified that she was unable to bring Claimant to his doctor's appointments for about two months since she was pregnant with her sixth child, so there was a period of time that he was not taking any medications. R.49-50. Ms. Gibson testified that for about a year and half, Claimant has been seeing a therapist every month. R.50. Ms. Gibson testified that when Claimant was not on medication his behavior was much worse. R.50. She testified that Claimant has been diagnosed with bipolar, attention deficit

hyperactivity disorder ("ADHD"), and depression and that he recently has been hearing voices. R.52-53.

Ms. Gibson testified that Claimant has a fascination with fires and that he has set multiple things on fire. R. 51. She testified that when Claimant was younger he lit a rug on fire and a piece of paper that he put under a neighbor's door. R. 51. She also testified that Claimant had burned a piece of cardboard at home and that he also sprayed his arm with hairspray and lit his arm on fire. R.51.

**C.    Medical Evidence**

### 1. Dr. William Hilger – April 10, 2008

Dr. Hilger, a psychologist, examined Claimant on April 10, 2008 when he was 12 years old. R.195. Dr. Hilger was able to review the Childhood Functional Report provided by Ms. Gibson but he did not read any formal medical or school reports since there were no reports on file. R.195. Claimant reported to Dr. Hilger that he had been attending school regularly and doing "ok" in school. R.195. Claimant admitted to Dr. Hilger that he gets into trouble at school because of fighting and cursing at the teachers. R.195. Claimant told Dr. Hilger that he likes to go outside and do activities, work on the computer. R.196. Claimant reported that he had friends and that he fought with his mother and siblings. R.196.

Claimant told Dr. Hilger that he saw a Dr. Trum who prescribed Prozac at 10mg, one tablet in the morning, and Adderall XR at 10mg, one tablet per day since February 13, 2008 which he had been taking regularly. R.195. Claimant did not report any other serious medical issues or psychiatric treatment. R.195.

In his analysis, Dr. Hilger found that Claimant exhibited intellectual abilities and overall intelligence to at least the low average range between the 14th and 19th percentiles with low level of perceptual motor skills. R.197. He found that Claimant had mild ADHD of the more inattentive type fairly controlled with medication. R.198. Dr. Hilger also opined that Claimant had low average intellectual functioning and that he had a current Global Assessment of Functioning ("GAF") score of 70-75.[1] R.198. Dr. Hilger concluded that Claimant appeared to have low average mental potential if he continued taking his ADHD medication to improve his attention to perform age appropriate activities involving understanding and memory, sustained concentration and persistence, social interaction, and adaptation. R.198.

### 2. Will County Psychological Assessment – April 19, 2008

Joshua P. Bearman-Kogan conducted a psychological assessment for treatment recommendations on March 27 and 28, 2008 and prepared a report dated on April 19, 2008. R.296. Dr. Rita Gray was the supervising psychologist. R.296.

During the assessment, Claimant reported being suspended four or five times during the year. R.298. Claimant told Mr. Bearman-Kogan that he had lit fires in his home several times in the past, once burning down the home while

---

[1] The GAF Scale reports a clinician's judgment of an individual's overall level of functioning and it is used in planning, measuring the impact, and predicting the outcome of the treatment. *See* DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, at 32-34 (4th ed. 2000). GAF scores from 41-50 indicate serious symptoms or impairments, including suicidal ideation, no friends and inability to hold a job. *Id.* at 34. GAF scores from 51-60 indicate moderate symptoms, and scores from 61-70 indicate only mild symptoms. *Id.*

other people were in it during mid-morning hours. R.298. Claimant reported that in the past week, he had set fire to garbage in the yard. R.298. Claimant's mother, however, reported that Claimant never had burned down the house but that when he was four, he did start a fire in their apartment and when he was five, he started a fire in another apartment. R.298.

Mr. Bearman-Kogan administered a number of personality and intellectual tests to Claimant. Claimant scored high on the Beck Depression Inventory II indicating a severe level of depressive symptoms within the past two weeks. R.300. He also scored high on the Adolescent Anger Rating Scale, indicating that his overall anger falls into the very high range which, according to Mr. Bearman-Kogan, merits further investigation and attention in therapy. R.300.

Mr. Bearman-Kogan concluded that Claimant's intellectual scores are in the low average range relative to his peers. R.302. Mr. Bearman-Kogan also was concerned with Claimant's desire to set and watch fire. R.302. Dr. Gray found that Claimant met the criteria set forth in the Diagnostic and Statistical Manual for Mental Disorders for Conduct Disorder, having admitted to engaging in activities that involve destruction of property, threatening another person with a knife at the age of five, and serious violations of rules as seen in repeated school offenses. R.302. Since these behaviors were present prior to the age of ten, the diagnosis also included the modifier of Childhood-Onset Type which indicates a poorer prognosis as well as a need for a higher intensity of treatment. R.302.

Mr. Bearman-Kogan also found Claimant to be exhibiting signs of Dysthmic Disorder given his anger and hostility. R.303. He recommended that Claimant would benefit from continuing in regular individual therapy to gain greater insight into his behavior as well as addressing the issues underlying his anger and depression. R.303.

### 3. Childhood Evaluation Form – April 25, 2008

An evaluation form completed by Dr. Leslie Fyans on April 25, 2008 found that Claimant's impairment or combination of impairments is severe but did not meet, medically equal, or functionally equal the listings. R.213, 218. Dr. Fyans reviewed various reports to complete his evaluation, including a report dated March 12, 2008 from Dr. Niazi, a report dated April 21, 2008 from the JFK Administrative Center, a daily activities report dated March 7, 2008 and a report from Dr. Hilger dated April 22, 2008. R.218.

Dr. Fyans found that Claimant had less than marked limitations in the various domain evaluations. R.215. For the domain of Acquiring and Using information, Dr. Fyans found that Claimant had no limitation and that his IQ score indicated a low average range of intelligence. R.215. For the domain of Attending and Completing Tasks, Claimant was found to have a less than marked limitation. R.215. Dr. Fyans also noted that Claimant was taking Prozac and Adderral and had been doing better with his medication and that Claimant was able to function at the psychological exam with his medication. R.215.

For the domain of Interacting with Others, Claimant was found to have a less than marked limitation. R.215. Dr. Fyans noted that "sometimes" Claimant gets into trouble for fighting and cursing the teachers but that Claimant has friends and "gets along ok" with others. R.215. Dr. Fyans also noted that Claimant argues with his mother and siblings at times. R.215. Dr. Fyans found that Claimant had a less than marked limitation in both Caring for Yourself and Health and Physical Well-Being. R.216. Reasons for these include the fact that Claimant dresses and bathes himself and is on medication for ADHD. R.216. No limitation was found for Moving and Manipulating Objects. R.216.

### 4. Functional Behavioral Assessment – May 22, 2008

On May 22, 2008, Joliet Public Schools prepared a Functional Behavior Assessment ("FBA") of Claimant to determine the need for a Behavioral Intervention Plan. R.306. The FBA was developed and reviewed at an Individualized Education Program ("IEP") meeting to develop an IEP for Claimant. R.306. The FBA included data collected through direct observation of the target behavior. R. 306.

The FBA concluded that Claimant's behavior at school of noncompliance, disrespect, or inappropriate expression of anger occurred moderately to severely at least three or more times per day and that these behaviors lasted at least 15 minutes and more than 30 minutes. R.306. The FBA noted that these behaviors occurred during all types of school settings except for free time and occurred after a number of different types of interactions with the teacher and other students.

R.307. The FBA also found that Claimant engaged in off task and disruptive behavior at least four or more times per day when not taking prescribed medication lasting between 5 minutes and more than 15 minutes at times. R.308. These behaviors also were found to occur at all types of different settings and followed numerous types of interactions with the teacher and other students. R.308.

### 5. Joliet Public Schools Evaluation Results – May 22, 2008

In connection with Claimant's IEP, Joliet Public Schools collected records and certain information to assist in determining Claimant's IEP. R.324. In a health evaluation, the school nurse Rose Mabry documented on September 6, 2006 that after speaking with Claimant's mother, Claimant had a history of asthma and depression. R.324. Medications include Adderrall 10 mg daily and Prozac 10 mg daily. R.324. The school psychologist found that Claimant has average ability and is able to attain concepts in the classroom appropriately in the General Intellect and Academic Performance category. R.324.

A Social Emotional Assessment also was completed by Jennifer Cichon, a social worker on May 9, 2008. R.324. Jennifer Cichon visited Claimant's mother and conducted a home visit on March 6, 2008 noting that Claimant lived with his mother, his mother's boyfriend, and five younger siblings. R.325. Ms. Cichon also noted that, at the time of the interview, Ms. Gibson was pregnant and on bed rest. R.325. Ms. Gibson reported the following to Ms. Cichon during her home visit: that Claimant does not get along with most of his siblings nor Ms. Gibson's

10

boyfriend and is disrespectful; that Claimant visits with his biological father, approximately once a month; that Claimant's father was emotionally and physically abusive; and that Claimant has a history of bipolar disorder and psychiatric hospitalizations. R.325.

Ms. Cichon found that Claimant enjoys using computers, listening to music, writing, singing, and rapping. R.325. Ms. Gibson reported that Claimant has exhibited behavioral problems since he was preschool aged and that he was asked not to return to preschool due to problems with behavior. R.325. Ms. Gibson reported that he started fires when he was five years old and that he chased one of her friends with a knife. R.325. In total, he has started about 8 fires. R.325. When he was in kindergarten, he was diagnosed with ADHD and started taking medication. R.325. Ms. Gibson also reported that she was concerned that Claimant was a danger to himself and to others. R.325. In February, Claimant threatened to harm himself and wished that he was dead. R.325. Due to these concerns, Screening Assessment and Support Services had been working with Claimant and he sees a psychiatrist through Will County Mental Health. R.325. Ms. Gibson reported that Claimant had a psychiatric evaluation on February 2, 2008 and was prescribed Prozac for depression and Adderrall for ADHD. R.325.

Ms. Cichon noted that Claimant has exhibited average academic ability but that there are social, behavioral, and emotional concerns at school. R.325. He is touchy, easily upset, sensitive to criticism, and displays poor anger control. R.325. When upset at school, he becomes agitated, negativistic, noncompliant, and

withdraws. R.325. For the current school year at the time of the report, Ms. Cichon noted that Claimant had 17 referrals for inappropriate behavior, including abusive language, defiance, disrespect, noncompliance, insubordination, classroom disruption, making inappropriate comments, singing, dancing, clapping, refusing to stay seated, throwing a pencil out of anger, and fighting. R.325. A number of different intervention strategies had been attempted including conferences with the student, conferences with the parent, social work services, "cool down" pass, Side-by-Side program, Focus Group with Troy Cicero, Lunch Connections, behavior contact with Academic Advisor, and the Better Me program at Thompson School. R.325-26.

The Emotional and Behavior Problem Scale also was administered as part of this evaluation.[2] R.326. Claimant was rated by two of his teachers, his language arts teacher and his math teacher. R.326. The ratings for his language arts teacher are as follows: Learning Problems--5, Interpersonal Relations--4, Inappropriate Behavior--4, Unhappiness/Depression--0, Physical Symptoms/Fears--9, Percentile Score 4%. R. 326. The results of Ms. Thornhill's rating scale are as follows: Learning Problems--7, Interpersonal Relations--7, Inappropriate Behavior--0, Unhappiness/Depression--0, Physical Symptoms/Fears--0, Percentile Score 2%. R.326. On both scales, Claimant was rated as having emotional and behavioral

---

[2] Subscale standard scores between 7 and 14 are considered average. Standard scores below 7 in 3 subscale areas indicate that a student is exhibiting significant behavioral problems at school. R.326.

problems that have a significant effect on his education. R.326. Areas of particular concern are learning problems, interpersonal relations, inappropriate behavior, unhappiness/depression, and physical symptoms and fears. R.326.

Based on all of the tests performed as part of the school evaluation, the Joliet School District concluded that Claimant has an emotional disorder that interferes with his educational performance, and therefore, he was eligible for special education services. R.326.

### 6. Dr. David Biscardi – December 12, 2008

The ALJ requested that Dr. David Biscardi review the record and respond to an interrogatory. R.335. Dr. Biscardi opined that Claimant's combination of impairments is severe but that they do not meet, equal or functionally equal any listing. R.343. Dr. Biscardi also noted that Claimant had less than marked limitations in the domains for Acquiring and Using Information, Assigning and Completing Tasks, and Caring For Self and marked limitations in the domain of Interacting with Others. R. 343. Dr. Biscardi also noted that Claimant's severe symptoms initially were responding well to medications and treatment. R.343.

### 7. Will County Mental Health Department Psychiatric Evaluation – August 11, 2009

Claimant was evaluated on August 11, 2009, but the doctor performing the evaluation was not listed. R.359. The evaluation describes Claimant's inattention, hyperactive, impulsive, and appositionally defiant symptoms. R.359. The evaluator found that Claimant had bipolar disorder, ADHD, conduct disorder.

R.360. The evaluator also gave Claimant a GAF score of 50. R.360. Abilify 2mg and Adderrall 25mg were prescribed. R.360.

**D.    The ALJ's Decision – November 23, 2009**

After a hearing and review of the medical evidence, the ALJ determined Claimant was not disabled and denied his application for SSI. R.11-25. The ALJ evaluated Claimant's application under the requisite three-step sequential evaluation process to determine whether an individual under the age of 18 is disabled. R. 11. At step one, the ALJ found Claimant has not engaged in substantial gainful activity since January 22, 2008, the date of the application. R.14. At step two, the ALJ determined Claimant had the following severe impairments: ADHD, conduct disorder, and bipolar disorder. R.14. At step three, the ALJ concluded that Claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. R.14. The ALJ explained that "although these impairments are considered 'severe' under the regulations, they do not meet or medically equal the criteria of any listed impairments described in Appendix I of the Regulations." R.14. The ALJ concluded that "the medical evidence does not document listing-level severity and no acceptable medical source has mentioned findings equivalent in severity to the criteria of any listed impairment, individually or in combination." R.14.

The ALJ determined that Claimant did not have a marked limitation in any of the six domains or extreme limitation in any one of the domains. R.19. The ALJ

noted that Claimant had a less than marked limitation in Acquiring and Using Information.[3] R.19. The ALJ also noted that the record reveals that when Claimant takes his medication, he does very well in school. R.20. Also, the ALJ found that the IQ testing revealed that Claimant has the ability to acquire and use information. R.20. The ALJ also noted that the special services that he received at school were not related to his learning ability. R.20.

The ALJ found that Claimant has a less than marked limitation in the domain of Attending and Completing Tasks.[4] R.20. The ALJ found that while Claimant's mother has stated that Claimant has some difficulties in attending and completing tasks and requires reminders, the overall evidence reveals that Claimant's limitations are less than marked. R.21.

In the domain of Interacting and Relating with Others, the ALJ found that Claimant has a marked limitation noting that the record reveals Claimant has been repeatedly disciplined for being disrespectful and fighting. R.22. Even though evidence has shown that his behavior has improved with medication, the ALJ found a marked limitation in this domain which is supported by Dr. Biscardi's opinion. R.22.

The ALJ concluded that Claimant had no limitations in the domains of Moving and Manipulating Objects and Health and Physical Well-Being. R.23-24.

---

[3] This domain involves how well a child uses the information that he has learned. R.19.

[4] This domain considers how well a child is able to focus and maintain attention, and how well he is able to begin, carry through, and finish activities. R.20.

The ALJ found no allegations that Claimant has any limitations in manipulating objects. R.23. Additionally, since Claimant has no physical limitations, there was no evidence supporting any limitation in Claimant's health and physical well-being. R.24. The ALJ found that Claimant had less than a marked limitation in the domain for Caring for Yourself because he only has disturbances in his sleep patterns. R.23. The ALJ found that since Claimant does not have an impairment or combination of impairments that result in either "marked" limitations in two domains of functioning or "extreme" limitation in one domain of functioning, he does not functionally equal any listing. R.24.

The ALJ further found that Claimant's and Ms. Gibson's allegations of disabling limitations are not credible. R.24. The ALJ stated that she had reached that finding after considering a variety of factors, including the objective medical evidence, the opinion evidence, Claimant's response to treatment, his lack of compliance with medications and therapy, school reports, and his activities. R.24.

## II. LEGAL STANDARDS

### A.    Standard of Review

The "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g). A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000). Under such circumstances, the district court reviews the decision of the ALJ. *Id*. Judicial review is limited to determining whether the decision is supported by

substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching his decision. *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A "mere scintilla" of evidence is not enough. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). Even when there is adequate evidence in the record to support the decision, however, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). If the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).

Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). It may not, however, "displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Thus, judicial review is limited to determining whether the ALJ applied the correct legal standards and whether there is substantial evidence to support the findings. *Nelms*, 553 F.3d at 1097. The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

**B.      Disability Standard**

A child is disabled within the meaning of the Social Security Act if the child is not engaged in substantial gainful activity and "has a medically determinable physical or mental impairment or combination of impairments that causes marked or severe functional limitations, and that can be expected to cause death or that has lasted and can be expected to last for a continuous period of not less than 12 months." 20 C.F.R § 416.906.  A three-step sequential evaluation is utilized in evaluating whether an individual under the age of 18 is disabled. 20 C.F.R. § 416.924(a). Under this process, the ALJ must inquire, in the following order: (1) whether Claimant is engaged in substantial gainful activity; (2) whether the Claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe"; (3) whether the Claimant has an impairment or combination of impairments that meets or medically equals the criteria of a listing, or that functionally equals the listings. *Id.*

To functionally equal a listing, the impairment must have a "marked" limitation in two domains of functioning or an "extreme" limitation in one domain of functioning. 20 C.F.R. § 416.926a(a). The domains of functioning are: Acquiring and Using Information; Attending and Completing Tasks; Interacting and Relating with Others; Moving About and Manipulating Objects; Caring for Yourself; and Health and Physical Well-Being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi). A "marked" limitation occurs when the impairment interferes with claimant's ability to independently initiate, sustain, or complete activities. 20 C.F.R. §

416.926a(e)(2)(i). An "extreme" limitation occurs when the impairment interferes very seriously with claimant's ability to independently initiate, sustain or complete activities. 20 C.F.R. § 416.926a(e)(3)(i).

### III. DISCUSSION

Claimant raises the following issues in support of his motion: (1) whether the ALJ gave insufficient weight to the opinion of his treating source; (2) whether the ALJ failed to weigh the evidence concerning the severity of Claimant's limitations; (3) whether the ALJ properly analyzed the credibility of Claimant and his mother; and (4) whether the ALJ erred in failing to call a medical expert. The Commissioner, on the other hand, asserts that the ALJ's decision is supported by substantial evidence and should be affirmed.

### A. The ALJ Did Not Address a Contradictory Opinion Offered in Support of a Finding of Disability

Claimant argues that the ALJ failed to consider the medical opinion of a treating source, and therefore, her opinion is inadequate. Claimant's Br. [Dkt.#18], at 9-10. The record shows that Mr. Bearman-Kogan, a student extern who was supervised by psychologist Dr. Rita Gray, conducted a psychological assessment of Claimant in April 2008 at the Will County Health department and Community Heath Center and diagnosed Claimant with childhood-onset conduct disorder and dysthmic disorder. R.302-303. That evaluation found that since these behaviors were present prior to the age of ten (i.*e.*, childhood-onset conduct disorder) indicates a poorer prognosis and a need for higher intensity of treatment.

R.302. Although the ALJ mentions Mr. Bearman-Kogan's psychological assessment of Claimant in March 2008 (R.16), the ALJ does not mention his findings and recommendations in her evaluation of Claimant's disability even though the assessment contradicts the opinions of the state agency doctors and Dr. Biscardi.

The Commissioner argues that the Mr. Bearman-Kogan and Dr. Gray were not a treating source and that they did not offer any opinion. Commissioner's Resp. Br. [Dkt.#26], at 1. This argument, however, is not meritorious in that the ALJ did not find that Mr. Bearman-Kogan was not a treating source, and agency lawyers are forbidden from defending an agency decision on grounds that the agency itself did not assert. *See Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009). In addition, without any citation to the record, the Commissioner argues that the ALJ did not fail to consider Mr. Bearman-Kogan's assessment. *Id.* That argument is simply wrong. Nowhere in her opinion does the ALJ indicate that she considered that psychological assessment in her disability determination of Claimant.

The Seventh Circuit has held that "the ALJ must consider 'all relevant evidence' and may not analyze only that information supporting the ALJ's final conclusion." *Godbey v. Apfel*, 238 F.3d 803, 808 (7th Cir. 2000) (citing *Clifford v. Apfel*, 227 F.3d 863, 871 (7th Cir. 2000). While the ALJ is not required to articulate her reasons for rejecting every piece of evidence, she must at least minimally discuss evidence that contradicts the Commissioner's position. *Id.*

(citing *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995)); *Aidinovski v. Apfel*, 27 F.Supp.2d 1097, 1102-03 (N.D. Ill. 1998); *See also* SSR 96-7p.

In her opinion, the ALJ explained that she gave significant weight to the opinions of the state agency reviewing psychologists Dr. Fyans and Dr. Boyenga and to the medical expert Dr. Bacardi. The ALJ explained that these opinions were "given significant weight because they were consistent with the record as a whole and supported by the evidence." R.19. The ALJ, however, did not articulate any reason why she did not consider or give any weight to the psychological assessment of Claimant by Mr. Bearman-Kogan. Social Security Ruling ("SSR") 06-03p instructs that evidence from even non-licensed medical sources is entitled to significant weight. The Ruling explains that "[w]ith the growth of managed health case in recent years and the emphasis on containing medical costs, medical sources who are not 'acceptable medical sources,' such as practitioners, physician assistants, and licensed clinical workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources, who are not technically deemed 'acceptable medical sources' under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." SSR 06-03p.

While the fact that Mr. Bearman-Kogan does not qualify as an "acceptable medical source" may be a reason to reject, or at a minimum give less weight to, his opinion and recommendations, the ALJ did not proffer any reason why she did not

consider his assessment, and the Court can not re-create the ALJ's analysis for her. Because the ALJ failed to discuss Mr. Bearman-Kogan's psychological assessment and did not offer any explanation as to why she rejected that evaluation and its conclusion, the ALJ's determination and analysis is, at a minimum, incomplete. Because the ALJ's failed to address this evidence, we cannot affirm the ALJ's opinion.

**B.      The ALJ's Analysis of the Six Functional Equivalency Domains Fails To Consider All of the Relevant Medical Evidence**

Claimant argues that the ALJ's analysis of the six functional domains is deficient because she failed to take into account all of the relevant medical evidence. Claimant's Br. [Dkt.#18], at 10-11. As discussed above, SSR 06-03p instructs that opinions from individuals who may not be "acceptable medical sources" still "are important and should be evaluated on key issues such as impairment severity and functional effects." SSR 06-03p. Claimant argues, and the record reveals, that some of the findings in the psychological assessment performed by Mr. Bearman-Kogan contradicts the ALJ's conclusions which were based solely upon the opinions of the agency doctors and Dr. Biscardi.

An ALJ is required to fully articulate her reasoning and cannot ignore or discount evidence favorable to a claimant without explaining why such evidence was rejected. *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001) The Seventh Circuit has held that "the ALJ must consider 'all relevant evidence' and may not analyze only that information supporting the ALJ's final conclusion." *Godbey*, 238

F.3d at 808 (citing *Clifford*, 227 F.3d at 871). While the ALJ is not required to articulate her reasons for rejecting every piece of evidence, she must at least minimally discuss evidence that contradicts the Commissioner's position. *Id.* (citing *Green*, 51 F.3d at 101); *Aidinovski*, 27 F.Supp.2d at 1102-03; s*ee also* SSR 96-7p.

While the ALJ acknowledged that Claimant was evaluated by Mr. Bearman-Kogan, there is no indication in her opinion that she considered and weighed any of his opinions and recommendations when analyzing six functional domains. In addition, there is additional evidence from the tests performed as part of the Joliet School District evaluation that indicate Claimant has a social, emotional and behavioral problem that interferes with his educational performance. R.326. Because the ALJ only mentions the medical evidence favoring the denial of benefits (with the one exception of the domain for Interacting and relating with Others), we are unable to discern whether she considered the record as a whole. Therefore, this case must be remanded.

**C.** **The ALJ Failed To Provide Specific Reasons for Rejecting the Credibility of Claimant and His Mother**

Since the ALJ is in the best position to observe witnesses, an ALJ's credibility finding will not be overturned as long as it has some support in the record. *Dixon v. Massanari,* 290 F.3d 1171, 1178-1179 (7th Cir. 2001). An ALJ's credibility determination will be reversed only if the claimant can show it was "patently wrong." *Herr v. Sullivan*, 912 F.2d 178, 182 (7th Cir. 1990). The ALJ's

credibility finding should only be upheld if the ALJ gives specific reasons for the finding which are supported by substantial evidence. *Myles v. Astrue,* 582 F.3d 672, 676 (7th Cir. 2009)*, citing Moss v. Astrue,* 555 F.3d 556, 561 (7th Cir. 2009). SSR 96-7p provides that an ALJ must consider certain factors when evaluating credibility, including the claimant's treatment history and daily activities.[5] However, SSR 96-7p also provides that "it is not enough for the adjudicator to simply recite the factors that are described in the regulations for evaluating symptoms." SSR 96-7p.

Claimant argues that the ALJ did not provide specific reasons for finding his testimony and the testimony of his mother incredible. Claimant's Br. [Dkt.#18], at 12-14. Claimant also argues that the ALJ did not follow SSR 96-7p and that she did not adequately explain her reasoning in making her credibility determinations. Claimant's Br. [Dkt.#18], at 11. We agree.

In reaching her determination, the ALJ states: "As explained above, in reaching this finding, the undersigned has considered a variety of factors, including the objective medical evidence, the opinion evidence, the claimant's response to treatment, his lack of compliance with medication and therapy, school

---

[5] Social Security Ruling 96-7p requires consideration of: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, that the individual has received for the relief of pain or other symptoms; (6) measures other than treatment, that the individual uses to relieve the pain or other symptoms; and (7) any other factors concerning the individual's functional limitations due to pain or other symptoms.

reports, and the claimant's activities." R.24. This is precisely the kind of conclusory language that SSR 96-7p prohibits. *See Brindisi v. Barnhart*, 315 F. 3d 783, 787 -788 (7th Cir. 2003). Although an ALJ is not required explain every factor in making a credibility determination, her opinion "must contain specific reasons for the finding on credibility, supported by the evidence in the record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statement and the reasons for that weight." *Id*. That was not done here. Instead, the ALJ merely states that Claimant's and his mother's testimony about Claimant's disabling limitations are not credible without offering any specific explain as to what testimony she did not believe and how she weighed the testimony.

Additionally, the ALJ did not properly find that Claimant's alleged lack of compliance with medications and therapy should be a factor in Claimant's credibility determination. SSR 96-7p states that an ALJ "must not draw inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treat." SSR 96-7p. The ALJ must consider evidence in the record which may "explain infrequent or medical visits or failure to seek medical treatment." *Id.* Indeed, the record in this case includes many possible reasons for Claimant's noncompliance. Yet, the ALJ failed to consider or weigh these reasons, or at a minimum, failed to explain why she may have rejected such explanations. Thus, it is necessary to remand the case to allow the ALJ to address

problems with articulation and to explain the basis of her adverse credibility determination.

**D.** **The ALJ Did Not Violate Claimant's Due Process Rights by Proffering Interrogatories to Dr. Biscardi and Relying on His Opinion**

Before the hearing in this case, the ALJ proffered interrogatories and the medical records to Dr. Biscardi for his review. R.335-42. Dr. Biscardi answered the interrogatories and opined that Claimant did not meet, equal, or functionally equal any listings, and Dr. Biscardi's medical opinion was included in the record. R.343.

Claimant argues that the ALJ violated his due process rights by proffering pre-hearing interrogatories to a medical expert without allowing him the opportunity to first comment on the questions or to cross-examine the medical expert. Claimant's Br. [Dkt.#18], at 15. Claimant, however, provides no case support for his argument. The HALLEX, the SSA's procedural manual for ALJs, contains no provision for sending a copy of interrogatories to a claimant before sending them to a medical expert. Rather, the HALLEX states: "After the [medical expert] responds to the initial transmission of interrogatories, a copy of the response will be sent to the claimant and representative and will be included in the record as an Exhibit. The claimant and representative may request that the ALJ allow additional interrogatories be submitted to the [medical expert] or that a

supplemental hearing be held to question the [medical expert] if the answers to the interrogatories are unfavorable to the claimant."[6]

One court has found that a claimant's due process rights were violated when interrogatories were submitted to two physicians after the ALJ's hearing which denied the claimant the opportunity to cross-examine the physicians. *Leik v. Barnhart*, 296 F.Supp.2d 1345 (M.D. Fla. 2003). In that case, the ALJ relied heavily on the opinions of the medical experts, and the court concluded that the failure to allow such cross-examination was an abuse of the ALJ's discretion. *Id.* Other courts also have found that if the ALJ denies benefits based on a report submitted after the hearing, a claimant's due process rights have been denied, and the case must be remanded to afford the claimant an opportunity to rebut the report and cross-examine the physician. *Allison v. Heckler*, 711 F.2d 145, 147-48 (10th Cir. 1983); *Gullo v. Califano*, 609 F.2d 649, 649-650 (2d Cir. 1979).

In this case however, neither Claimant nor his mother state that they did not receive a copy of the Dr. Biscardi's response to the interrogatories, and, in any event, Dr. Biscardi's answers were included in the record. In addition, neither Claimant, his mother nor their attorney asked to submit additional interrogatories to Dr. Biscardi or requested a supplemental hearing to question Dr. Biscardi. Accordingly, we find that Claimant's due process rights were not violated by the opinion proffered by Dr. Biscardi.

---

[6] *See* HALLEX § 1-2-5-42, http://policynet.ba.ssa.gov/hallex.nsf/links/10205042.

## IV. CONCLUSION

For the reasons set forth above, Claimant's motion for summary judgment is granted [Dkt.#17], and the Commissioner's cross-motion for summary judgment is denied [Dkt.#25]. This case is remanded to the Social Security Administration for further proceedings consistent with this Memorandum Opinion and Order.

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: March 12, 2012